I'm pleased to hear argument in United States v. McVey. Mr. Byrne. Good morning, Your Honors. May it please the Court. My name is Jonathan Byrne. I'm here on behalf of Terry McVey, who is the defendant in this case. The issue here is whether a single incident of uploading child pornography that occurred two and a half years before Mr. McVey's offense of conviction for simple possession of child pornography can be included as relevant conduct for that offense. Looking at this Court's case decision in Mullins, it lays out three factors that are to be considered when determining whether prior behavior constitutes relevant conduct. Temporal proximity, the regularity of the behavior, and the similarity of the behavior to the offense of conviction. Looking at those three factors in this case shows that that single prior incident can't qualify as relevant conduct in this case. What if that single incident was one of 200 incidents that was carried out once a week for three years? Hypothetical. If it was... One of 200 carried out over a two-year period. If the 200 were identifiable and we knew when they were and everything, yes, I think that would be a much different case, Your Honor, yes. So if we had multiple uploadings, that would dilute your argument? If we had multiple identifiable uploadings and a more compressed time frame also, Your Honor, yes, that would certainly be a much different argument. In terms of the temporal proximity, the two and a half years, even the district court admitted that's significant and the government didn't really argue otherwise in their brief. So I think we can take that as a given. The regularity, courts have held that when you're talking about the regularity of conduct, the government has to provide evidence of specific repeated events. And in this case, there's only one specific event that the government can point to, and that's the December 31, 2008 upload of the video that was child pornography. Mr. Did he basically acknowledge he'd been at this type of conduct over a period of some 10 years and had, over numerous occasions, uploaded pornography to that site that he was communicating with, some Yahoo porn or some site? He made a statement after his arrest that over the course of 10 years, he had probably uploaded about six times in the course of 10 years. During that whole time, he had possession of and had possessed videos and images? Well, presumably he had to possess them in order to upload them, Your Honor, yes. What do we do when the prior course of conduct is more serious than the instant offense? Does that have a bearing? It's not one of… The prior course of conduct was distributional. If you're going to upload it, you're doing it for other people to see. The instant offense, as I understand it, is for possession? Yes, Your Honor. And so does it make a difference that the prior course of conduct is more serious than the instant offense? I don't think it does, Your Honor, because it doesn't play into one of those three Mullins factors. It may be something that the judge can consider as a 3553A factor when deciding what sentence to impose, but I think the question of whether it is relevant conduct or not is separate from the severity of the conduct as opposed to the nature of it. Mullins identified factors to look at, but the ultimate question is whether it was a course of conduct or a scheme of conduct, a related course of conduct. And if something other factor also suggested a course of conduct, we'd be entitled to consider that too, wouldn't we? Well, Your Honor, that would be a factor that wasn't considered below. I understand. Well, except it's considered to the extent you're asking the question, was this a course of conduct that related all these events? Yes, Your Honor, but the argument that the severity of the offense plays some role. I don't know why they wouldn't bear on similarity because in order to distribute, if so, factor have to possess and it sort of denotes an immersion in this kind of business that, you know, this is not simply casual. I mean, it sort of nails down the similarity point if you have not only possession but possession plus. Well, I think, Your Honor, in evaluating, comparing the two behaviors for similarity, obviously the content of the behaviors is relevant to that. What I don't think is that simply saying the prior behavior is more severe. As long as the prior behavior encompasses the instant offense, which it certainly does here, I'm not sure why the prior behavior, if it's the instant offense plus, wouldn't sort of make the similarity factor more emphatic. Well, Your Honor, I think that in terms of that question, we should look to Hodge, which was a case that involved distribution of cocaine. The offensive conviction was possession with intent to distribute. There was no actual evidence of distribution. The prior incidents were distribution of cocaine, and this court held that that was not sufficiently similar to constitute relevant conduct because the government hadn't provided sufficient evidence of the nature of those sales. And so I think we have the same situation here where the prior conduct is not sufficiently detailed to make the similarity comparison. You're not suggesting that each of the prior instances has to have a particular date attached to it in order to be part of a course of conduct, are you? I'm suggesting we have to have some indication as to when they took place because if we're talking about the 6th. Do you dispute the 6th? We don't dispute that he admitted to the 6th. At least 6th. At least 6th. But there's no confirmation of when that happened. If he admitted to it, is it fatal that he somehow can't attach a date to it if it's admitted conduct? Yes, it is, Your Honor, because he said he attached a date to it. He said over the course of 10 years. But if it was six uploads that happened within the space of one year and then for nine years he hadn't done anything else, that's different than if it had been very close in time to the offense of conviction that all these happened. But even if they happened. Did you take his comment to mean that? I took his comment to mean that I have uploaded at least six over a period of 10 years as describing a course of conduct that he's been in that business for over a period of 10 years, which means he at least possessed it for that period of time. I did not take it. You didn't take it that way? I didn't take it that way, Your Honor. I took it as him admitting that he had done this on isolated occasions. Six times over 10 years is once every 20 months. Almost anything somebody does once almost every two years is hardly going to be. . . He needed new pictures to distribute. He wanted to be relevant. That may be the case, but we don't know anything about that because. . . In light of the questions that you've been responding to, how do you address the question of the presence of the presumption of reasonableness here? This is a within guidelines sentence, isn't it? That's actually a below guidelines sentence. I wasn't going to point that out, but I applaud your candor. It's a below guidelines sentence. It is, although when one looks at how the district court arrived at the sentence, it's actually more of an above guidelines sentence. Actually, it's a double variance. It is, Your Honor. It's a long, strange trip to get to this sentence, and this sort of plays into the question of whether if this is error, it is harmless error, Your Honor, because the judge said, in my experience, district courts, when they impose a variance sentence, do it one of two ways. One way, they calculate the guideline range and set that aside, go straight to the 3553A factors and pull a sentence together based on that. The other way they do it is say, this is the guideline range. I think this is too severe for whatever reason. Calculates an alternative guideline range and then works off of that to achieve the sentence that they think is appropriate in that case, and that's what happened here. So the district court in this case was guided by the guidelines all the way, and so the fact that the sentence But he did rely on the 3553 factors to end up where he thought the conduct in this case was based. He was sympathetic with your argument about the number of images, but he was also quite troubled by the conduct that could have led to actual statutory rape of these young girls. Yes, Your Honor. And that troubled him a lot. So he said, I think 78 months is the right spot for this. He got there by this double variance. He got there, Your Honor, but I don't think there's anything in the record that indicates if we had started with a correctly calculated guideline range, he would have reached the same point. Your argument is that he might have gone lower given the arguments and the reasons that he articulated for the sentence he assigned. Yes, Your Honor. Well, if there are no other questions. What's your view of the standard of review here? I mean, I know I suspect you think it's de novo. Yes, Your Honor. Do we owe any kind of deference to the district court's familiarity with the case and the fact that he would have a concrete impression of who this individual was and what he'd engaged in? I don't think so in this case, Your Honor, because there's no dispute on what the facts are. The facts are what they are, and no one argued the facts at sentencing. It was all what the facts mean and the application of the guidelines to those facts. So I think it's a question of law, and it would be a de novo review issue, Your Honor. Thank you. Thank you. Ms. Rada. Good morning. May it please the Court, my name is Jennifer Rada, and I'm an assistant United States attorney in the Southern District of West Virginia. The sentence imposed by the district court should be affirmed. The evidence supported the application of the distribution enhancement, and in any case, any error would have been harmless. But initially, to address what was just being discussed, the standard of review, the United States said the position that the standard of review should be for clear error. In this case, this is not an interpretation of a term of the guidelines. It is an interpretation of whether the facts of this case support the application. This gets to that very happy intersection between law and fact. When you say, is somebody an employee, is this a course of conduct, you can say, well, yes, I find that the course of conduct extended over a long period of time and included at least six uploads. In a sense, that's factual. Your colleague argues, well, it's really not factual because the component facts are not disputed. It's the meaning of those facts, and so therefore it's legal. But it always presents that law school question, is this de novo or clear error. Yes, Your Honor. I think the positions are pretty clear that they're unclear. Yes, it is a very complicated standard of review in these cases. Next question on fact and law. To some extent, however, in these cases, there are a number of precedents in other circuits that would indicate that the determination of whether uncharged activity constitutes relevant conduct is a finding of fact. That has been found in the Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the Ninth Circuit, and to some degree in the Third Circuit. So there is precedent in other circuits that these questions of whether facts fit into specific for relevant conduct for a specific enhancement that it is a finding of fact and not a de novo review. Except for purposes of the question that an error occurred, is it harmless or do we have to remand because it's unclear that the district court might not have sentenced lower given that his starting point was below the guidelines? This does not need to be remanded. Any error would be harmless, primarily even if the distribution enhancement was not applied. The guidelines would drop from 29 to 27, which would indicate a guideline range of 70 to 87 months. This sentence of 78 months is squarely within the guideline range that would be calculated if the distribution enhancement was not applied. Furthermore, while we discussed, there's sort of a double variance in this case. However, that ultimate second upward variance was based on the egregious conduct of the defendant in this case. And the record in the opinion of the United States is clear that this ultimate sentence was what the judge determined was an appropriate sentence based upon the behavior of the defendant, which he found to be very disturbing and very different from typical possession cases. The circuitous route that he took to arrive at the 78-month sentence might suggest that, well, that's where he wanted to get to. And that's what he thought was appropriate. You know, he was going to get to where he was going to get to. When you start breaking down, it might not be pretty, but this is where he wanted to end up. You get the feeling at the end of the day this is where he wants to end up. Yes, Your Honor. It appears that he wanted to officially on the record indicate that he agreed with the defendant certain guidelines were probably not applicable in his mind. That would be the number of images and the use of computer. But on the other point, whether an error actually occurred, what do you say about that? As far as whether this, in fact, was relevant conduct, the question of relevant conduct is whether it's the same course of conduct, and that is in part whether it's part of an ongoing series of offenses. Now, the defendant has admitted that he possessed and distributed child pornography during a 10-year period. During that period, he also would have been receiving child pornography, which is another crime. These are all related crimes. And we know from at least November of 2010. Within the 10-year period, is there some evidence that there was a real lapse, for example, in the most recent time segment that he had discontinued this, or would you characterize it as more or less a continuing course of conduct, or was it an interrupted pattern of behavior that showed little or no activity in the most recent past? In the most recent past, he actually escalated in his behavior as far as the evidence proves. In the time period prior to 2010, his collection and distribution is essentially based upon his statements to law enforcement and the cyber tip that was identified in 2008. But starting in November of 2010, he began conversing with an undercover law enforcement agent that he believed was the stepfather of three young girls. And he was indicating not only that he would be willing to pay to engage in sexual activity with those minor girls, but he requested that the alleged stepfather send him video of the alleged stepfather having sex with the youngest of those girls. This has escalated over that 10-year period to a point where he was essentially requesting and soliciting production of child pornography involving three girls that he had every reason to believe were real girls. And so not only does he admit that he was engaging in the collection and distribution of child pornography, he was escalating in the most recent past. And so the United States believes that this shows an ongoing course of conduct that, in fact, was escalating by the time that this was discovered in 2010 and 2011. And based upon this, the United States believes that this is a clear ongoing- Did the district court take that into account? The district court did place a significant amount of emphasis on the recent behavior of the defendant. He took that into account as to determining whether this was temporally relevant, whether this was part of a series of ongoing regular conduct. And ultimately, he concluded that this was part of a specific- it was the same conduct that was continuing over this 10-year period when he determined that this was, in fact, an applicable guideline. He specifically noted that at page 170 of the JA in the sentencing transcript. And so the court did take into account that behavior in determining that, while the 2008 distribution was several years prior, the defendant's admitted conduct and confirmed conduct based upon his chats with the undercover indicate that during that time period he was very actively involved in the period between 2008 and his arrest in- the search warrant being executed in 2011. And so based on all this, the United States believes that this was clearly an ongoing pattern of conduct, regardless of when those six downloads- or those six uploads of child pornography occurred. Simply because we can't pinpoint a date does not mean that those six distribution instances should be disregarded from the determination as to whether this is relevant conduct. If there are no further questions from the court. No, we don't have further questions. Thank you, Your Honors. Mr. Byrne? Just a couple of quick things, Your Honors. Starting with the issue of the harmless error, perhaps being hopeful. I direct the court's attention to page 189 of the joint appendix, which is the conclusion of the district court's explanation for the sentence it imposed. The district court says, taking into consideration all of these factors, the nature and circumstance of the offense, and Mr. McVeigh's personal history and characteristics, I believe a sentence of 78 months is sufficient to justify or meet the requirements under the guideline. So I think that reinforces our argument that the sentence, even though it's a variance, it's a double variance. It's pretty clear, though, from his context that that's not a guideline sentence. He said earlier, the previous page, he says merits a higher sentence than the revised guideline would support. And he's clearly recognizing he's going beyond what the guidelines would dictate. He's recognizing two variances. Yes, Your Honor. I don't disagree. I'm not saying it is a guideline sentence. The Ducey case found that significant when a court departs from the guidelines and finds facts and focuses on those facts sufficient to go beyond the guideline, that that's indicative, that's where the court wanted to end up. And anyway, I understand your argument. On the substantive nature of the issue, there were questions about, you know, the nature of these six prior uploads, when they occurred, was there escalation of behavior? The burden of proof in this case for a sentencing enhancement rests on the government. The government failed to produce any of that evidence. They relied on this vague statement that Mr. McVeigh made. And so it's the government that's failed to bring in the evidence to make those six uploads more relevant to this analysis. And the final thing I wanted to mention. That would be reviewed under clear error, wouldn't it? I'm sorry, Your Honor? That question of whether there's an evidentiary matter, the government had produced the amount of evidence, reviewing that under a kind of a deferential standard, wouldn't we? What do you say about the fact that opposing counsel said that there were very many circuits that have taken these relevant conduct determinations and put them under a clear error standard? I think it depends on the question of whether the issue turns on the sufficiency of the evidence, and everyone agrees what the standard is, or the question turns on what the legal standard is and everyone agrees what the evidence is. There's no dispute about the legal standard. You have the three elements. Temporal proximity, regularity, similarity. Now, if it had been an error of law in the sense that the district court said, well, had done a one-factor analysis or had omitted one of the factors, I mean, that would be something we'd review de novo, but where we're dealing with the weight to be attached to certain statements and incidents, doesn't that get more into a clear error standard where we are really dealing with the matter of weight that should be attached to evidence? You're saying, well, I don't think very much weight should be attached to it because all we have is this general statement, but the district court thought more weight should be attached to that general statement than apparently you do. When you get into what weight should be attached to evidence, don't you move closer to a clear error standard? I'll agree that you move closer. I still think at the bottom the question is, what's the meaning of relevant conduct as a legal matter? I don't know because it's not as if the district court overlooked the three factors. He applied the three factors. You just don't like the way he applied the three factors, but what I'm suggesting to you is that on this spectrum, and I do think they're probably in some ways a mixed question of fact and line. I do think it's a spectrum, but it's not as if the district court was in the dark as to what the elements were or that he refused to apply one of the elements. He was in the right legal ballpark. As a matter of law, he was in the right ballpark. It's just a question to the weight. You want to give some of these pieces of evidence. The district court is not required to disregard a statement from this individual's own mouth about the fact that, yeah, he's been engaged in all these different instances over this period. I can attach significant weight to it if you want. I think certainly can in the 3553A connotation. I think in this situation, it's not as relevant. My time is up if I can make one final point, and that is what the government pointed out about the district court looking back to the discussions that Mr. McVeigh had with the undercover officer and everything in making this determination. Mullen says that the proper comparison is the conduct that may be relevant conduct with the offense of conviction, not other relevant conduct. There's a sort of bootstrapping that goes on where, well, you know, we're not talking about what happened here. We're talking about the conduct that began a year before, and that gets closer to temporal proximity and I don't think is the proper way the analysis should be done. Thank you, Your Honor. Well, we thank you. Come down and say hi to people, and then we'll head right into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Allyson K. Duncan